UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JUAN CARLOS LOPEZ ORTUNO,
Petitioner,
v.
MARKWAYNE MULLIN, et al.,
Respondents.

Case No. 5:26-cv-03743-PD

**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS**

**A# 246-061-276**

Juan Carlos Lopez Ortuno ("Petitioner") filed a counseled Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. Dkt. No. 1. The Court has considered the Petition, the attached exhibits, Respondents' answer and exhibit, and Petitioner's reply. For the reasons stated below, the Petition is granted in part.

## I. Background

Petitioner is a native and citizen of Mexico who entered the United States without inspection when he was three years old, in or about 1998.[1]

[1] The Petition contains contradictory information on Petitioner's citizenship. One paragraph alleges that Petitioner is a native and citizen of Guatemala, Petition ¶ 16, while another alleges he is a native and citizen of Mexico. *Id.* ¶ 10. According to the

Since then, he has continuously resided in the United States and has never departed the country. Prior to his current detention, he had never been placed in removal proceedings, deported, removed, or detained by Immigration and Customs Enforcement ("ICE"). Petitioner resides in California and is the father of two United States citizen minor daughters; one daughter has developmental delays and requires ongoing support. Petitioner has worked in construction, warehouse operations, temporary labor positions, and other employment opportunities.

According to the information in the Form I-213 provided by Respondents, Petitioner has the following criminal history.

On December 14, 2016, Petitioner was arrested for driving without a license under Cal. Vehicle Code § 12500(a) by the Los Angeles County Sheriff's Department ("LACSD"). He was convicted and sentenced to a fine.

On January 2, 2019, Petitioner was arrested for possession of unlawful paraphernalia under Cal. Health & Safety Code § 11364(a), a misdemeanor.[2] This resulted in a "[d]eferred judgment in drug court" and diversion.

On March 12, 2019, Petitioner was arrested for possession of a controlled substance under Cal. Health & Safety Code § 11377(a),[3] a

---

Petitioner's I-213 Form from the Department of Homeland Security, he is a citizen of Mexico. *See* Dkt. No. 8-1 at 1. Therefore, the Court concludes that Petitioner is a citizen of Mexico.

[2] Section 11364(a) of the California Health and Safety Code states: "It is unlawful to possess an opium pipe or any device, contrivance, instrument, or paraphernalia used for unlawfully injecting or smoking (1) a controlled substance specified in subdivision (b), (c), or (e) or paragraph (1) of subdivision (f) of Section 11054, specified in paragraph (14), (15), or (20) of subdivision (d) of Section 11054, specified in subdivision (b) or (c) of Section 11055, or specified in paragraph (2) of subdivision (d) of Section 11055, or (2) a controlled substance that is a narcotic drug classified in Schedule III, IV, or V."

[3] Section 11377(a) requires "imprisonment in a county jail for a period of not more than one year" for people possessing certain controlled substances. *See* Cal. Health & Safety Code § 11377(a).

misdemeanor. Arrest relief was granted under Cal. Penal Code § 851.93 and there was no sentence.[4]

On March 13, 2019, Petitioner was arrested for possession of a controlled substance under Cal. Health & Safety Code § 11377(a), and for possession of unlawful paraphernalia under Cal. Health & Safety Code § 11364(a), both misdemeanors. This resulted in a "[d]eferred judgment in drug court" and successful diversion.

On April 17, 2019, Petitioner was arrested for possession of a controlled substance under Cal. Health & Safety Code § 11377(a), and for possession of unlawful paraphernalia under Cal. Health & Safety Code § 11364(a), both misdemeanors. This resulted in a "[d]eferred judgment in drug court" and successful diversion.

On May 9, 2019, Petitioner was arrested by the Pasadena Police Department for a "[l]ocal ordinance violation" which was later "[d]ismissed in furtherance of justice."

On June 20, 2019, Petitioner was arrested for possession of a controlled substance under Cal. Health & Safety Code § 11377(a), for possession of unlawful paraphernalia under Cal. Health & Safety Code § 11364(a), and for receiving known stolen property under Penal Code § 496(a). This resulted in a "[d]eferred judgment in drug court" and diversion.

On June 24, 2019, Petitioner was arrested for possession of a controlled substance under Cal. Health & Safety Code § 11377(a) and for possession of unlawful paraphernalia under Cal. Health & Safety Code § 11364(a). This resulted in a "[d]eferred judgment in drug court" and diversion.

---

[4] Section 851.93 provides that, subject to certain conditions, "an arrest for which arrest relief has been granted is deemed not to have occurred, and a person who has been granted arrest relief is released from any penalties and disabilities resulting from the arrest, and may answer any question relating to that arrest accordingly." Cal. Penal Code § 851.93(b)(3).

On July 23, 2019, Petitioner was arrested for possession of controlled substance paraphernalia under Cal. Health & Safety Code § 11364(a). This resulted in a "[d]eferred judgment in drug court" and diversion.

On October 9, 2019, Petitioner was arrested for possession of a controlled substance under Cal. Health & Safety Code § 11377(a). This resulted in a "[d]eferred judgment in drug court" and diversion.

On October 25, 2019, Petitioner was arrested by the Pasadena Police Department for a local ordinance violation which was later "[d]ismissed in furtherance of justice."

On November 24, 2019, Petitioner was arrested for possession of unlawful paraphernalia under Cal. Health & Safety Code § 11364(a) and a local ordinance violation. There was no sentence.

On November 1, 2020, Petitioner was arrested for trespass: refuse to leave private property under Penal Code § 602(o)(2) and possession of unlawful paraphernalia under Cal. Health & Safety Code § 11364(a), both misdemeanors. It appears no prosecution was pursued and arrest relief was granted under Penal Code § 851.93. Dkt. No. 8-1 at 4 ("Prosecutor rejected, combined with other counts/cases . . . .").

On November 5, 2020, Petitioner was arrested for shoplifting under Penal Code § 459.5. The prosecution was "[d]ismissed in furtherance of justice" and arrest relief was granted under Penal Code § 851.93.

On June 10, 2023, Petitioner was arrested for battery (spouse/ex-spouse/dating) under Penal Code 243(e)(1) and shoplifting under Penal Code § 459.5, both misdemeanors. It appears prosecution was not pursued. *See* Dkt. No. 8-1 at 5 ("Prosecutor released/detained only; victim unavailable/declined to testify").

On February 2, 2024, Petitioner was arrested for battery (spouse/ex-spouse/dating) under Penal Code 243(e)(1), a misdemeanor. The charge was

"[d]ismissed in furtherance of justice" and arrest relief was granted under Penal Code § 851.93.

On February 13, 2026, Petitioner was arrested for possession of a controlled substance under Cal. Health & Safety Code § 11377(a) and for possession of unlawful paraphernalia under Cal. Health & Safety Code § 11364(a). The charges are pending. *See* Dkt. No. 8-1 at 3–5.

Petitioner alleges that eleven days after his February 2026 arrest, he entered the Socorro Residential Treatment Program which he successfully completed. He was discharged on April 23, 2026. *See* Dkt. No. 1-7 (letter from a Chemical Dependency Worker at Socorro Residential Treatment, confirming that Petitioner entered on February 24, 2026 and was discharged on April 23, 2026, and that he completed treatment/recovery plan, and goals). During this time, Petitioner alleges that he remained at liberty and "Respondents did not assume immigration custody following [his] February arrest or at any point during his successful completion of residential treatment." Petition ¶ 18. In fact, Petitioner alleges that "Respondents declined to assume immigration custody and instead permitted Petitioner to remain at liberty in the community while successfully completing a residential substance abuse treatment program and continuing his life with his family." *Id.* at 43–44.

On April 26, 2026, three days after completing his treatment, Petitioner was arrested for possession of a controlled substance under Cal. Health & Safety Code § 11377(a), a misdemeanor. His charges are pending. *Id.* ¶ 19; Dkt. No. 8-1 at 5.

On April 27, 2026, ICE took Petitioner into custody and served him a Notice to Appear which charged him as removable under 8 U.S.C. § 1182(a)(6)(A)(i) as an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time other

than designated by the Attorney General. *See* Dkt. No. 1-6 (Notice to Appear). Thereafter, he was transferred to the Adelanto ICE Processing Center, where he remains detained. Petition ¶ 19. Petitioner's removal proceedings are pending.[5]

Aside from the two pending misdemeanor matters, Petitioner's counsel is unaware of any additional arrests or criminal convictions. Petitioner's counsel also has not identified any documentation reflecting a conviction arising from either arrest. *Id.* ¶ 20.

Petitioner alleges his successful completion of residential substance abuse treatment reflects meaningful efforts towards rehabilitation, that he remains committed to his recovery, participates in recovery programs, maintains a relationship with his twelve-step sponsor, and remains involved in faith-based and community organizations. *Id.* ¶ 21.

Petitioner suffers from significant mental health conditions, including Post-Traumatic Stress Disorder ("PTSD"), anxiety disorder, and psychosis. Shortly after arriving at Adelanto, Petitioner experienced a serious mental health episode and was transferred to Anaheim Global Medical Center for approximately two weeks of inpatient psychiatric treatment. Following his discharge, Petitioner was returned to ICE custody, where he continues receiving mental health treatment, remains housed in protective custody, and continues taking prescribed medication. *Id.* ¶ 22.

On June 25, 2026, Petitioner filed a motion requesting an individualized custody redetermination before the Immigration Court. *See* Dkt. No. 1-9. On June 26, 2026, the Immigration Judge denied Petitioner's request for a custody redetermination, and stated the following:

---

[5] According to Petitioner' Automated Case Information from the Executive Office for Immigration Review website, Petitioner has an individual hearing on January 8, 2027. *See* https://acis.eoir.justice.gov/en/.

> The Court has carefully considered the orders of the United States Federal District Court for the Central District of California, including that court's orders issued on November 25, 2025, and on December 18, 2025. See Maldonado Bautista v. Santacruz, No. 5:25-CV-01873-SSS-BFM (C.D. Cal.) (current stay in effect). Respondent is charged as a noncitizen present in the United States without having been inspected and admitted or paroled, see Notice to Appear, and he does not meaningfully argue otherwise. This Court, based on its independent assessment of relevant law, regulations, statutes, and caselaw, as part of the Executive Office for Immigration Review, Department of Justice, determines that it lacks jurisdiction over the request for custody redetermination.

Dkt. No. 1-4 at 1.

Petitioner alleges he has been detained without any individualized determination that his detention is necessary to serve a legitimate governmental interest. Petition ¶ 26.

## II. Discussion

The Petition raises two claims: (1) Respondents' decision to permit Petitioner to remain at liberty following his February 2026 arrest and during his treatment created a protected liberty interest which, under due process, required a pre-deprivation hearing before Respondents arrested him in April 2026; and (2) his continued detention without an individualized custody determination at which Respondents bear the burden of proof by clear and convincing evidence, violates due process. Petition at 43–45.

Respondents attached Petitioner's Form I-213 and assert that the Petition "does not allege an adequate basis to justify an order compelling release from detention." Dkt. No. 8 at 2. Respondents reference Petitioner's criminal history summarized in the I-213 and state that this is Petitioner's first time in ICE detention and that he has no prior releases. Ostensibly, given his criminal history, Respondents contend that an immigration judge

should determine whether Petitioner is a flight risk or danger. *Id.* As such, Respondents do not oppose entry of a bond hearing under 8 U.S.C. § 1226(a) and state that "Petitioner appears to be a member of the Bond Eligible Class certified in *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM (*Bautista*)." *Id.*

In reply, Petitioner contends Respondents did not adequately address the argument that, despite not being previously detained by ICE, Petitioner gained a protected liberty interest after Respondents declined to arrest him after his February 2026 arrest and subsequent treatment. Dkt. No. 9 at 2. Further, Petitioner argues his protected liberty interest began in 2016, after his first arrest and conviction. *Id.* at 15. If the Court does not order release, Petitioner requests an order requiring an individualized bond hearing with the burden on Respondents by clear and convincing evidence. *Id.* at 46.

## A. Procedural Due Process

Petitioner contends he was entitled to an individualized determination by a neutral decisionmaker *before* he was arrested by Respondents. Petitioner also argues Respondents created a protected liberty interest when they declined to arrest him following his previous arrests by local authorities.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The protection afforded by the Due Process Clause runs to citizens and noncitizens alike. *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)) (cleaned up) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.").

Evaluation of Petitioner's due process rights proceeds in two steps: "the first asks whether there exists a protected liberty interest under the Due

Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

**1. Petitioner has not shown that he has a protected liberty interest which entitled him to pre-deprivation process**

Courts in this district have found that noncitizens who have been released by immigration authorities have a liberty interest which may require pre-deprivation notice and hearing. *See Herman v. DHS*, No. 26-cv-01995-MBK, 2026 WL 1723960, at * 4 (C.D Cal. June 12, 2026); *Aperyan v. Semaia*, No. 26-cv-00699-WLH-AYP, 2026 WL 874734, at *4 (C.D. Cal. Mar. 27, 2026); *Meneses v. Santacruz*, 811 F. Supp. 3d 1158 (C.D. Cal. 2025).

Those decisions rely on the premise that release from custody on parole is an implicit promise that will be revoked only if the individual fails to live up to the parole conditions. Not only is there a heightened liberty interest in maintaining parole once granted, but such individuals have already been found not to be a danger or flight risk, yielding a heightened risk of an erroneous deprivation of liberty. *See Kamel v. Santacruz*, No. 5:26-cv-03481-BFM, 2026 WL 1965112, at *2 (C.D. Cal. July 2, 2026).

Here, Petitioner admits he has never been previously detained and released by immigration authorities. *See* Petition ¶¶ 16, 46. Instead, Petitioner relies on *Nola v. Dep't of Homeland Sec.*, No. 5:26-cv-02180-MBK, 2026 WL 1330294 (C.D. Cal. May 13, 2026) to argue that Respondents created a protected liberty interest when they declined to detain him after his first controlled substance-related arrest. *See* Petition at 22–23.

In *Nola*, the petitioner was a lawful permanent resident who was admitted into the United States in 2002, was gainfully employed during his

residency, and had United States citizen children. In 2008, the petitioner was convicted of felony child endangerment and sentenced to 364 days in jail and court-ordered classes. In 2023, he was placed in removal proceedings but was not taken into immigration custody; shortly thereafter, his 2008 conviction was dismissed in the interests of justice under California law. *Nola*, 2026 WL 1330294, at *2. While in removal proceedings, the petitioner appeared at all scheduled hearings and had no other criminal history. The court in *Nola* found his circumstances comparable to those who had been previously detained and released by immigration authorities:

> The Government placed Petitioner in removal proceedings in 2023, but elected not to arrest him or even place him under conditions of supervision. At the time, the Government was plainly aware of Petitioner's 2008 conviction, as it is the basis for the Government's removal charges. It nonetheless chose not to detain Petitioner, which "at least implicitly," "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk. . . . The Government's decision to allow Petitioner to remain free while h[e] pursued his applications for cancellation of removal and naturalization carried with it "an implicit promise," . . . that he would only be detained if he commits some act demonstrating that he is a danger or flight risk.

*Id.* at *8 (internal citations omitted). Based on this, the court found that due process required the government to show clear and convincing evidence at a bond hearing that the petitioner's detention was warranted. *Id.*

Here, Petitioner attempts to analogize *Nola* by arguing that Respondents knew about Petitioner's previous arrests by local authorities but declined to detain him. However, there is no evidence in the record that such a custody determination by Respondents took place. In *Nola*, the government knew about the petitioner's past conviction when it initiated removal proceedings yet did not detain him until three years later; all the while, there were no facts suggesting that petitioner was a danger or flight risk as he had

no criminal history since 2008 and was complying with this removal proceedings. Here, there is no evidence of a comparable government action suggesting that Respondents knew about Petitioner's existence or criminal history and implicitly made a determination that he was not a flight risk or danger. Further, unlike in *Nola*, Petitioner had subsequent arrest history; he was detained by ICE a day after he was arrested by local authorities for possession of a controlled substance.

Petitioner also attempts to analogize *Kharitonova v. Albarran*, No. 3:26-cv-01362-JSC, 2026 WL 531441 (N.D. Cal. Feb. 25, 2026), which found a protected liberty interest for a noncitizen who had resided in the United States since 2012, entered on a visa, had a pending asylum application, was in removal proceedings, attended all hearings, had no criminal history, and who was never previously detained. 2026 WL 531441, at *1. In finding that a liberty interest existed, the court reasoned: "[a]lthough the government did not detain and then release her, it made a decision *not* to detain her in the first place; Petitioner thus has the same liberty interest in her continued freedom as an individual initially detained." *Id.* at *2 (emphasis in original). The court's decision in *Kharitonova* was based on the government's decision to not detain the petitioner despite processing her asylum application, initiating removal proceedings, and advising her to appear for multiple hearings over a period of years. *Id.* By contrast, here, Petitioner was not in immigration proceedings prior to his current detention; therefore, there is insufficient evidence that Respondents were aware of his presence and acquiesced to a liberty interest.

Based on the foregoing, Petitioner has not shown that he acquired a protected liberty interest which required pre-deprivation process. Accordingly, Count One is dismissed. However, this does not mean that Petitioner may continue to be detained without any process.

**2. Due process requires a bond hearing**

Respondents do not oppose granting Petitioner a bond hearing under 8 U.S.C. § 1226(a), "consistent with what Courts in this District have generally ordered in similar cases." Dkt. No. 8 at 2–3. Respondents are silent on who should bear the burden at this bond hearing. Petitioner contends the burden should be on Respondents by clear and convincing evidence. Dkt. No. 9 at 46.

To determine what procedures are constitutionally sufficient to protect a liberty interest, the Court applies the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022) (assuming, without deciding, that *Mathews* applies in immigration detention context, and collecting authority applying *Mathews* to immigration detention). The *Mathews* test balances three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

Regarding the first factor, Petitioner has a substantial private interest as he has lived in the United States since 1998, when he was three years old, has worked during his residency, and has two United States citizen minor daughters.

Turning to the second *Mathews* factor, the risk of an erroneous deprivation of a petitioner's liberty interest is considerable where he has not received any bond or custody redetermination. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) (risk of erroneous deprivation is considerable for petitioner previously released on bond after it was determined he was not a danger to the community or a flight risk). On June

25, 2026, Petitioner filed a motion for a custody re-determination. On June 26, 2026, his request was denied by an immigration judge ("IJ") based on lack of jurisdiction. Dkt. No. 1-4.

Beginning in July 2025, the Department of Homeland Security ("DHS") took the position that individuals who entered without inspection were detained under § 1225 and were not entitled to the protections set out in § 1226(a). *See Maldonado Bautista v. Santacruz*, 813 F. Supp. 3d 1084, 1094 (C.D. Cal. 2025) (describing policy). The Board of Immigration Appeals ("BIA") then issued a decision agreeing with DHS's position that such individuals are properly subject to § 1225(b) and not entitled to bond hearings. *See Matter of Yajure-Hurtado*, 29 I. & N. Dec. 216 (B.I.A. 2025). Subsequently, a district court in this District granted a class-wide certification, declared unlawful the Government's policy of detaining individuals like Petitioner under 8 U.S.C. § 1225(b), and vacated DHS policy implementing its incorrect interpretation of the immigration laws. The certified "Bond Eligible Class" is comprised of noncitizens "without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination." *Bautista v. Santacruz*, 813 F. Supp. 3d 1084, 1127 (C.D. Cal. 2025). The court further found that Bond Eligible Class members are "entitled to consideration for release on bond by immigration officers and, if not released, a custody redetermination hearing before an immigration judge." *Maldonado Bautista v. Noem*, No. 5:25-cv-01873-SSS-BFM, 2025 WL 3678485 at *1 (C.D. Cal. Dec. 18, 2025). On February 18, 2026, based on Respondents' continued noncompliance, the *Bautista* court granted a motion to enforce the final judgment and vacated *Matter of Yajure-Hurtado*, 29 I. &

N. Dec. 216 (B.I.A. 2025). *Bautista v. Santacruz*, 820 F. Supp. 3d 1016, 1032 (C.D. Cal. 2026). The Ninth Circuit subsequently stayed the vacatur of *Yajure-Hurtado* as well as the *Bautista* order and final judgment outside the Central District of California but declined to stay the order and final judgment inside this District. *See Bautista, et al. v. United States Department of Homeland Security, et al.*, Nos. 25-7958, 26-1044, Dkt. 14 (9th Cir. March 31, 2026).

On July 30, 2026, the Ninth Circuit confirmed that those who entered without inspection are properly detained under § 1226, not § 1225, and are entitled to the protections of that statutory provision. *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1164–65 (9th Cir. 2026). *See also Veliz-Pina v. Semaia*, No. 5:26-cv-04590-MBK, 2026 WL 3012453, at *5–7 (C.D. Cal. Oct. 6, 2026) (summarizing the history of DHS's policy change, the *Bautista* litigation and the government's non-compliance).

Petitioner alleges the IJ denied his request for a custody redetermination based on *Matter of Yajure-Hurtado*, despite counsel's argument before the IJ that Petitioner was entitled to a bond hearing under § 1226(a) as a member of the Bond Eligible Class. Petition ¶ 53. Therefore, it appears Petitioner has not received any custody redetermination since he was arrested more than seven months ago, on April 27, 2026.[6] Based on the

---

[6] In reply, Petitioner asks the Court to order release and not a bond hearing, arguing that because Respondents already failed to provide an individualized custody determination, no further bond hearing could cure the violation. Dkt. No. 9 at 20–23. Petitioner discusses *Garcia Ortiz v. Henkey*, No. 1:26-cv-00043-BLW, 2026 WL 948275 (D. Idaho Apr. 7, 2026), where the district court ordered release after a court-ordered bond hearing was found to be inadequate; the court had previously issued a conditional writ ordering a bond hearing or release, and found release to be appropriate "[g]iven Petitioner's minimal criminal history and strong ties to the United States". *Id.* at *4. That case is distinguishable because here, the Court has not previously ordered a bond hearing and there is no evidence at this time suggesting that an immigration judge will deny bond without making an individualized determination.

foregoing, the Court finds the risk of erroneous deprivation without a bond hearing is substantial.

Regarding the third *Mathews* factor, the government has a strong interest in preventing noncitizens from remaining in the United States in violation of the law. *Rodriguez Diaz*, 53 F.4th at 1208. However, the government has no legitimate interest in detaining Petitioner without a hearing pursuant to 8 U.S.C. § 1226(a).

In the Central District of California, the government must show at six-month intervals that continued detention pending removal proceedings is justified by clear and convincing evidence. *See Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015). As Petitioner's detention has now surpassed six months and considering Petitioner's residency and the fact he has not been provided any bond hearing on the merits, the Court will order that the government bear the burden of justifying Petitioner's continued detention by clear and convincing evidence. Accordingly, Count Two of the Petition is granted to the extent it seeks a bond hearing with the burden on the government by clear and convincing evidence.

## IV. Order

For the foregoing reasons, the Petition is GRANTED as to Count Two and the remaining count is dismissed.

Respondents are ORDERED to release Petitioner Juan Carlos Lopez Ortuno (A# 246-061-276), unless he is provided, within **seven (7) days** of this Order, an individualized bond hearing before an immigration judge under 8 U.S.C. § 1226(a) where the Government bears the burden of showing by clear and convincing evidence that Petitioner poses a flight risk or danger to the public.

Within **ten (10) days** of this Order, Respondents shall lodge a status report with the Court detailing if and when the hearing occurred, if bond was

granted or denied, and, if bond was denied, provide the Court with a transcript (or recording) of the bond hearing along with the reasons for denial.

IT IS SO ORDERED.

DATE: November 25, 2026

Patricia Donahue

Patricia Donahue
United States Magistrate Judge